1

2

3

4

5

6

7

8                             UNITED STATES DISTRICT COURT

9                      FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    AMY MARIE BUTLER,                          No. 2:14-cv-0683-MCE-EFB P

12                    Petitioner,

13           vs.

14    D. K. JOHNSON, Warden                      FINDINGS AND RECOMMENDATIONS

15                    Respondent.

16

17           Petitioner is a state prisoner proceeding without counsel with a petition for a writ of

18    habeas corpus pursuant to 28 U.S.C. § 2254.  She challenges a judgment of conviction entered

19    against her on May 2, 2011, in the Yuba County Superior Court on charges of robbery of an

20    inhabited dwelling in concert with two or more persons, conspiracy to commit robbery, and

21    principal armed with a firearm.  She seeks federal habeas relief on the following grounds: (1) the

22    trial court's abuse of discretion in sentencing her to the upper term violated her rights under the

23    Eighth and Fourteenth Amendments and the decisions of the United States Supreme Court in

24    *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000) and *Cunningham v. California*, 549 U.S. 270

25    (2007); (2) the trial court's abuse of discretion in imposing consecutive terms violated state law

26    and her federal constitutional rights; and (3) her trial counsel rendered ineffective assistance.

27    Upon careful consideration of the record and the applicable law, the undersigned recommends

28    that petitioner's application for habeas corpus relief be denied.

1

## I. Background

In its unpublished memorandum and opinion affirming petitioner's judgment of conviction on appeal, the California Court of Appeal for the Third Appellate District provided the following factual summary:

> Two people lost their lives as a result of a plan to steal marijuana originally hatched by defendant Amy Marie Butler. Defendant was given a break for her cooperation and then violated her probation by possessing a loaded firearm. Defendant now appeals the state prison sentence imposed by the trial court after revocation of her probation. The court imposed a term of 12 years for robbery of an inhabited dwelling in concert with two or more persons (Pen.Code, §§ 211, 213, subd. (a)(1)(A);[1] hereafter robbery), principal armed with a firearm (§ 12022, subd. (a)(1)), and conspiracy to commit robbery (§ 182; hereafter conspiracy).

> Defendant contends the trial court abused its discretion in imposing the upper term of nine years for the robbery, asserting that the court relied upon only one aggravating factor – that she took advantage of a position of trust – and that factor does not outweigh factors in mitigation. She also contends the court abused its discretion in imposing a consecutive term of two years for conspiracy because it failed to cite any factor supporting imposition of a consecutive sentence, and that if we find the trial court did state a reason, which could only be that she took advantage of a position of trust, this was an impermissible dual use of facts. Finally, she contends if we find her trial counsel's failure to object to the trial court's imposition of a consecutive term for conspiracy was error, she received ineffective assistance of counsel.

> We reject defendant's contentions and affirm the judgment.

> **FACTUAL AND PROCEDURAL BACKGROUND**

> **Procedural History**

> On June 2, 2006, defendant pleaded no contest to robbery and conspiracy, admitted a principal armed with firearm allegation, and agreed to testify against her coconspirators. In exchange for defendant's pleas, admission and truthful testimony, the parties agreed that the two counts of murder would be dismissed, defendant would initially receive probation and she would be exposed to a maximum sentence of no more than 12 years.

> On May 20, 2009, following defendant's testimony against two of her coconspirators, the court suspended imposition of sentence and granted her probation for five years. Among the probation conditions were requirements that she obey all laws and not possess

---

[1] Undesignated statutory references are to the Penal Code.

any firearms or ammunition.  The court dismissed the two counts of murder.

On January 20, 2011, defendant was charged with violating her probation by failing to obey all laws and possessing a firearm and ammunition.  On February 22, 2011, defendant admitted violating the condition that she obey all laws and the prosecution moved to strike the duplicative possession allegations.

On May 2, 2011, the court sentenced defendant to 12 years in prison, consisting of the upper term of nine years for the robbery, one year for the firearm enhancement, and a consecutive term of two years for the conspiracy.[2]

**Facts Underlying the Charged Offenses**

In early September 2005, defendant was with Angelic Rampone, Michael Huggins, Matthew Griffin, Dustin Sparks, and Levill Hill.  At some point during their conversation, Huggins said he wanted to buy some marijuana and resell it to make money.  Defendant told the group that two of her friends from high school, Christopher Hance and Scott Davis, were growing a large quantity of marijuana for medicinal purposes at Hance's residence in Olivehurst.  Aside from defendant, only her boyfriend, Matthew Griffin, knew Hance and Davis.  Defendant told Huggins he could buy the marijuana from Hance and Davis, but at some point suggested that she could get Hance and Davis out of the house so the group could steal the marijuana.  Defendant was to share in an even split of the money made from selling the marijuana.

On September 13, 2005, defendant led some of the others to Hance's residence to steal the marijuana.  The plan was for defendant to get Hance and Davis out of the residence on the ruse that they were arranging for the purchase of $700 worth of marijuana.  However, the plan fell through when defendant was only able to get Davis to leave.

About a week later, the plan to steal marijuana was again discussed.  This time the plan was to tie up Hance and Davis and then steal the marijuana.  Defendant said she did not want to have anything to do with the plan anymore and would not participate.  However, defendant told the others that Hance and Davis were "good fighters" and that they had firearms in the trailer on the property where Davis stayed.

Early in the morning of September 27, 2005, Rampone, Huggins, Griffin, Sparks, and Hill drove to Hance's residence.  Huggins was armed with a .45–caliber handgun, supposedly to be used to subdue and tie up Hance and Davis.  After walking around the property, Hill and Griffen changed their minds and returned to their vehicle.  Huggins entered the front yard and headed toward the trailer in the

---

[2]  As part of defendant's plea bargain she agreed to waive the section 654 prohibition against multiple punishment.

3

backyard while Sparks stayed at the front yard gate. Huggins called out, "Yuba County Sheriffs" and "I want Scott Davis" and walked toward the trailer.

Initially thinking law enforcement was there, Hance's father, Michael, retrieved his medical marijuana recommendation. In the meantime, Huggins shot the family dog and went to the trailer, where he struggled with Davis, who was unarmed. Huggins shot Davis during the struggle. Davis collapsed and died on the scene. As Huggins and Hance fought, Michael came out of the house and retrieved a gun from the trailer. Huggins shot Hance in the pelvis and Hance fell to the ground. Michael pointed the shotgun at Huggins but lowered it when Huggins again yelled, "Yuba County Sheriff's Department." Hance shouted, "Dad, he's not a cop, he's not a cop." Michael asked for identification. Huggins ran from the scene, joined the rest of his group and they drove off. Hance was transported to a hospital where he died from his gunshot wound.

**The Initial Sentencing**

On May 20, 2009, finding that defendant had fulfilled her end of the bargain up to that point, the court imposed the agreed-upon sentence and placed defendant on five years' formal probation. The court made clear to defendant that possession of firearms or ammunition would be a violation of her probation and the basis for a new charge. Defendant signed the probation order containing the conditions that she obey all laws and not possess firearms or ammunition.

**Facts Underlying the Probation Violation**

While preparing for the trial of one of the coconspirators, an investigator for the district attorney's office found a photograph on defendant's Facebook site showing a male holding her arms as she held a handgun. A sheriff's detective was told by two people who were present when the photograph was taken that the male was defendant's boyfriend and he was showing defendant how to aim and shoot at a target while they were camping.

**The Probation Violation Sentencing**

The court announced its intent to sentence defendant to the upper term of nine years for the robbery, one year for the firearm enhancement and a consecutive term of two years for the conspiracy. The court then gave the following reasons for its intended sentence:

"In arriving at this intended sentence, the Court has considered that Defendant *took advantage of a position of trust*. She was friends with the victims and introduced and set up the initial meeting to purchase marijuana. *As a result of her involvement and the information she subsequently provided, the victims were shot to death* with a .45–caliber handgun. The Court has considered that Defendant has no known prior criminal record; however, in considering the totality of the circumstances, I do believe that the

upper term is warranted."[3] (Italics added.)  Later, in responding to defense counsel's request to impose no more than the low term, the court further observed that not only had defendant taken advantage of a position of trust, but she also had admitted to a detective that she was also involved in the second plan (to tie up the victims). And the court reiterated that there had been the loss of two lives.

*People v. Butler*, No. C068341, 2013 WL 1283866, at *1-3 (Cal. Ct. App. Mar. 29, 2013), review denied (June 12, 2013).

After her judgment of conviction was affirmed by the California Court of Appeal, petitioner filed a petition for review in the California Supreme Court.  Therein, she requested review of all of the claims she had raised on direct appeal.  Resp't's Lodg. Doc. entitled "California Supreme Court, Petition for Review, May 1, 2013."  The petition for review was summarily denied.  Resp't's Lodg. Doc. entitled "California Supreme Court Order Denying Petition for Review, June 12, 2013."

**II.  Standards of Review Applicable to Habeas Corpus Claims**

An application for a writ of habeas corpus by a person in custody under a judgment of a state court can be granted only for violations of the Constitution or laws of the United States.  28 U.S.C. § 2254(a).  A federal writ is not available for alleged error in the interpretation or application of state law.  *See Wilson v. Corcoran*, 562 U.S. 1,5 (2010); *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Park v. California*, 202 F.3d 1146, 1149 (9th Cir. 2000).

Title 28 U.S.C. § 2254(d) sets forth the following standards for granting federal habeas corpus relief:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -

---

[3]  Prior to stating the reasons for its intended state prison sentence, the court cited several reasons for denying another grant of probation.  (Cal. Rules of Court, rule 4.414(a)(1), (a)(3), (a)(4), (a)(8); undesignated rule references are to the California Rules of Court.)  While the trial court could have used any of these reasons to impose the upper term (*People v. Scott* (1994) 9 Cal.4th 331, 350, fn. 12; *People v. Bowen* (1992) 11 Cal.App.4th 102, 106), it did not expressly state that it was doing so.

1        (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

2

3        (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

4

5        For purposes of applying § 2254(d)(1), "clearly established federal law" consists of

6 holdings of the United States Supreme Court at the time of the last reasoned state court decision.

7 *Thompson v. Runnels*, 705 F.3d 1089, 1096 (9th Cir. 2013) (citing *Greene v. Fisher*, ___ U.S.

8 ___, 132 S.Ct. 38 (2011); *Stanley v. Cullen*, 633 F.3d 852, 859 (9th Cir. 2011) (citing *Williams v.*

9 *Taylor*, 529 U.S. 362, 405-06 (2000)). Circuit court precedent "may be persuasive in determining

10 what law is clearly established and whether a state court applied that law unreasonably." *Stanley*,

11 633 F.3d at 859 (quoting *Maxwell v. Roe*, 606 F.3d 561, 567 (9th Cir. 2010)). However, circuit

12 precedent may not be "used to refine or sharpen a general principle of Supreme Court

13 jurisprudence into a specific legal rule that th[e] [Supreme] Court has not announced." *Marshall*

14 *v. Rodgers*, 133 S. Ct. 1446, 1450 (2013) (citing *Parker v. Matthews*, 132 S. Ct. 2148, 2155

15 (2012) (per curiam)). Nor may it be used to "determine whether a particular rule of law is so

16 widely accepted among the Federal Circuits that it would, if presented to th[e] [Supreme] Court,

17 be accepted as correct. *Id.* Further, where courts of appeals have diverged in their treatment of

18 an issue, it cannot be said that there is "clearly established Federal law" governing that issue.

19 *Carey v. Musladin*, 549 U.S. 70, 77 (2006).

20        A state court decision is "contrary to" clearly established federal law if it applies a rule

21 contradicting a holding of the Supreme Court or reaches a result different from Supreme Court

22 precedent on "materially indistinguishable" facts. *Price v. Vincent*, 538 U.S. 634, 640 (2003).

23 Under the "unreasonable application" clause of § 2254(d)(1), a federal habeas court may grant the

24 writ if the state court identifies the correct governing legal principle from the Supreme Court's

25 decisions, but unreasonably applies that principle to the facts of the prisoner's case. [4] *Lockyer v.*

26

27      [4] Under § 2254(d)(2), a state court decision based on a factual determination is not to be overturned on factual grounds unless it is "objectively unreasonable in light of the evidence presented in the state court proceeding." *Stanley*, 633 F.3d at 859 (quoting *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004)).

28

1   *Andrade*, 538 U.S. 63, 75 (2003); *Williams*, 529 U.S. at 413; *Chia v. Cambra*, 360 F.3d 997, 1002

2   (9th Cir. 2004).  In this regard, a federal habeas court "may not issue the writ simply because that

3   court concludes in its independent judgment that the relevant state-court decision applied clearly

4   established federal law erroneously or incorrectly.  Rather, that application must also be

5   unreasonable."  *Williams*, 529 U.S. at 412.  *See also Schriro v. Landrigan*, 550 U.S. 465, 473

6   (2007); *Lockyer*, 538 U.S. at 75 (it is "not enough that a federal habeas court, in its independent

7   review of the legal question, is left with a 'firm conviction' that the state court was 'erroneous.'").

8   "A state court's determination that a claim lacks merit precludes federal habeas relief so long as

9   'fairminded jurists could disagree' on the correctness of the state court's decision."  *Harrington v.*

10  *Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

11  Accordingly, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner

12  must show that the state court's ruling on the claim being presented in federal court was so

13  lacking in justification that there was an error well understood and comprehended in existing law

14  beyond any possibility for fairminded disagreement."  *Richter*, 562 U.S. at 103.

15      If the state court's decision does not meet the criteria set forth in § 2254(d), a reviewing

16  court must conduct a de novo review of a habeas petitioner's claims.  *Delgadillo v. Woodford*,

17  527 F.3d 919, 925 (9th Cir. 2008); *see also Frantz v. Hazey*, 533 F.3d 724, 735 (9th Cir. 2008)

18  (en banc) ("[I]t is now clear both that we may not grant habeas relief simply because of §

19  2254(d)(1) error and that, if there is such error, we must decide the habeas petition by considering

20  de novo the constitutional issues raised.").

21      The court looks to the last reasoned state court decision as the basis for the state court

22  judgment.  *Stanley*, 633 F.3d at 859; *Robinson v. Ignacio*, 360 F.3d 1044, 1055 (9th Cir. 2004).  If

23  the last reasoned state court decision adopts or substantially incorporates the reasoning from a

24  previous state court decision, this court may consider both decisions to ascertain the reasoning of

25  the last decision.  *Edwards v. Lamarque*, 475 F.3d 1121, 1126 (9th Cir. 2007) (en banc).  "When

26  a federal claim has been presented to a state court and the state court has denied relief, it may be

27  presumed that the state court adjudicated the claim on the merits in the absence of any indication

28  or state-law procedural principles to the contrary."  *Richter*, 562 U.S. at 99.  This presumption

1   may be overcome by a showing "there is reason to think some other explanation for the state

2   court's decision is more likely." *Id.* at 785 (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991)).

3   Similarly, when a state court decision on a petitioner's claims rejects some claims but does not

4   expressly address a federal claim, a federal habeas court must presume, subject to rebuttal, that

5   the federal claim was adjudicated on the merits. *Johnson v. Williams*, ___ U.S. ___, ___, 133

6   S.Ct. 1088, 1091 (2013).

7         Where the state court reaches a decision on the merits but provides no reasoning to

8   support its conclusion, a federal habeas court independently reviews the record to determine

9   whether habeas corpus relief is available under § 2254(d).  *Stanley*, 633 F.3d at 860; *Himes v.*

10  *Thompson*, 336 F.3d 848, 853 (9th Cir. 2003).   "Independent review of the record is not de novo

11  review of the constitutional issue, but rather, the only method by which we can determine whether

12  a silent state court decision is objectively unreasonable." *Himes*, 336 F.3d at 853.  Where no

13  reasoned decision is available, the habeas petitioner still has the burden of "showing there was no

14  reasonable basis for the state court to deny relief." *Richter*, 562 U.S. at 98.

15        A summary denial is presumed to be a denial on the merits of the petitioner's claims.

16  *Stancle v. Clay*, 692 F.3d 948, 957 & n. 3 (9th Cir. 2012).  While the federal court cannot analyze

17  just what the state court did when it issued a summary denial, the federal court must review the

18  state court record to determine whether there was any "reasonable basis for the state court to deny

19  relief." *Richter*, 562 U.S. at 98.  This court "must determine what arguments or theories ... could

20  have supported, the state court's decision; and then it must ask whether it is possible fairminded

21  jurists could disagree that those arguments or theories are inconsistent with the holding in a prior

22  decision of [the Supreme] Court." *Id.* at 102.  The petitioner bears "the burden to demonstrate

23  that 'there was no reasonable basis for the state court to deny relief.'" *Walker v. Martel*, 709 F.3d

24  925, 939 (9th Cir. 2013) (quoting *Richter*, 562 U.S. at 98).

25        When it is clear, however, that a state court has not reached the merits of a petitioner's

26  claim, the deferential standard set forth in 28 U.S.C. § 2254(d) does not apply and a federal

27  habeas court must review the claim de novo.  *Stanley*, 633 F.3d at 860; *Reynoso v. Giurbino*, 462

28  F.3d 1099, 1109 (9th Cir. 2006); *Nulph v. Cook*, 333 F.3d 1052, 1056 (9th Cir. 2003).

**III. Petitioner's Claims**

      **A. Sentencing Claims**

            **1.  Upper Term Sentence**

      In her first ground for relief, petitioner claims that the trial court's abuse of discretion in

sentencing her to the upper term for the robbery violated her rights under the Eighth and

Fourteenth Amendments.  ECF No. 1 at 4.[5]  She also argues that the trial judge's use of "the

crime itself as an aggravating factor" violated the decisions of the United States Supreme Court in

*Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000) and *Cunningham v. California*, 549 U.S. 270

(2007).  *Id.*  In support of these claims, and all of her federal habeas claims, petitioner has

attached her opening brief on appeal filed in state court.  *Id.* at 20-26.

              **a.  State Court Decision**

      On appeal, petitioner argued that the trial court abused its discretion in imposing the upper

term of nine years for the robbery.  The California Court of Appeal denied the claim on state law

grounds, reasoning as follows:

> Defendant contends the court abused its discretion in imposing the
> upper term of nine years.  She asserts that the trial court relied on a
> single factor – that defendant took advantage of a position of trust
> in that she was friends with the victims – and that this factor was
> outweighed by other circumstances.  She asserts the court abused its
> discretion in imposing the upper term.  We find no abuse of
> discretion.
>
> A trial court's sentencing decision is reviewed for abuse of
> discretion.  (*People v. Sandoval* (2007) 41 Cal.4th 825, 847.)  "In
> reviewing for abuse of discretion, we are guided by two
> fundamental precepts.  First, "'[t]he burden is on the party attacking
> the sentence to clearly show that the sentencing decision was
> irrational or arbitrary.  [Citation.]  In the absence of such a showing,
> the trial court is presumed to have acted to achieve legitimate
> sentencing objectives, and its discretionary determination to impose
> a particular sentence will not be set aside on review."'  [Citation.]
> Second, a "'decision will not be reversed merely because
> reasonable people might disagree.  'An appellate tribunal is neither
> authorized nor warranted in substituting its judgment for the
> judgment of the trial judge.'"'  [Citation.]  Taken together, these
> precepts establish that a trial court does not abuse its discretion
> unless its decision is so irrational or arbitrary that no reasonable

---

[5]  Page number citations such as this one are to the page numbers reflected on the court's
CM/ECF system and not to page numbers assigned by the parties.

person could agree with it." (*People v. Carmony* (2004) 33 Cal.4th 367, 376–377.)  A single aggravating factor is sufficient to make a defendant eligible for an upper-term sentence.  (*People v. Black* (2007) 41 Cal.4th 799, 813.)

Defendant asserts that the trial court cited only one factor in aggravation in giving its reasons for imposing the upper term—that defendant took advantage of a position of trust. (Rule 4.421(a)(11).)  Defendant does not assert that this factor has no application here, but she places little value on it, stating, "[t]here is nothing to suggest the relationships were more than casual friends," they were not romantically involved and there was no fiduciary relationship.  From this, defendant argues, "the violation of trust was not as great as it could have been."

The aggravating factor that a defendant violated a position of trust focuses on a defendant's special status vis-á-vis the victim and the exploitation of trust or confidence.  (*People v. Dancer* (1996) 45 Cal.App.4th 1677, 1694–1695, *disapproved on other grounds* in *People v. Hammon* (1997) 15 Cal.4th 1117, 1123.)  As we have noted, the trial court observed that defendant "*took advantage of a position of trust*.  She was friends with the victims and *introduced and set up the initial meeting* to purchase marijuana.  *As a result of her involvement and the information she subsequently provided, the victims were shot to death* . . . ."  As can be seen by the italicized portion of the trial court's statement of reasons, the trial court recognized it was defendant's friendship with the victims, and the information she provided about them, that led to their deaths.  The information "subsequently provided" (after the initial meeting) was that the victims were "good fighters," that they had firearms, and that the firearms would be in the trailer.

In addition to finding defendant had taken advantage of a position of trust by providing information she obtained as a result of her relationship with the victims, the court also cited other factors in aggravation in the italicized portion of its reasons.  The court cited the loss of life (an aggravating factor within rule 4.421(a)(1)), and that there were two lives lost (an aggravating factor within rule 4.408(a), other criteria reasonably related to the sentencing decision).  The court also cited defendant's involvement in the second plan. (Rule 4.421(a)(8).)  Defendant's assertion that the court cited only one aggravating factor is belied by the record.

In her reply brief, defendant asserts that the trial court's reference to the loss of two lives "applies to the court's reasoning for not selecting the low term.  It has no bearing on why it chose the upper term."  Defendant lifts the court's comments out of context and ignores the court's reasons, which we italicized, *ante*, for imposing its intended sentence.

Reading the court's comments in context, we note defense counsel suggested that defendant's possession of the firearm, the basis for the probation violation, was not as serious as finding a gun under the seat of a car or in a house. He argued, ". . . I don't think it rises to the level of sentencing this young lady to prison.  I think she

10

should be reinstated.  And, albeit, I don't believe that she should receive the upper term for this violation.  I think the Court should consider [the] lower term."  To this the court responded that the probation violation was not a "technical violation."  The court stated, "There is no reason that you would try to learn how to shoot a gun if you didn't intend to shoot a gun.  *And when you think of the ultimate outcome, the loss of two lives, the lower term does not seem warranted*."  (Italics added.)

Thus, it is clear the court's comments were in response to defense counsel's alternative request of a low-term sentence.  Having previously stated that its intended sentence, including selecting the upper term for robbery as the base term, was based in part on the fact that "[a]s a result of her involvement and the information she subsequently provided, the victims were shot to death," it is equally clear that the court factored the loss of two lives into its upper-term sentencing choice.

As to defendant's purported offsetting mitigating circumstances, in addition to her view that the probation violation was not serious, she cites the following: She had no prior criminal record; both the prosecutor and the court commented favorably at the initial sentencing hearing regarding her thorough cooperation with law enforcement; since nothing was taken, it appears the offense was attempted robbery rather than robbery; and she had been crime free for more than four years when the violation was discovered.  Aside from defendant's having no prior convictions, for reasons we shall discuss, the other factors she cites either do not weigh into the calculus for determining the base term sentence or are entitled to little weight.

While events and conduct occurring during probation may be considered in determining whether to reinstate a defendant on probation and whether to run state prison sentences consecutively or concurrently, such events or conduct may not be considered in determining the base term.  (Rule 4.435;[6] *People v. Leroy* (1984) 155 Cal.App.3d 602, 605–606 [court may determine postprobation conduct in determining whether to impose consecutive or concurrent sentences]; *People v. White* (1982) 133 Cal.App.3d 677, 681 [court must consider postprobation events to determine whether the defendant should be reinstated on probation or incarcerated].)  Thus, defendant's claim that her probation violation was not as serious "as it could have been" is not a mitigating factor to be considered in determining the base term.  Even if it could be considered, it would be of little aid to her, because it still shows her willingness to violate a condition of her probation by committing another felony offense.  And the felony offense she committed, which was blatantly displayed on the Internet, involved possession

---

[6]  Rule 4.435 provides in pertinent part: "(b) On revocation and termination of probation under section 1203.2, when the sentencing judge determines that the defendant will be committed to prison: [¶] (1) . . . [¶] The length of the sentence must be based on circumstances existing at the time probation was granted, and subsequent events may not be considered in selecting the base term . . . ."

of a firearm – the same type of instrument that took the lives of the two victims here.  Moreover, as the trial court noted, she had no legitimate reason to learn how to aim and shoot a firearm if she had no intent to possess one.

Defendant sees mitigation in remaining crime free during the four years before the violation of probation.  While the court was free to consider that defendant was crime free between the time she entered her plea on June 2, 2006 and the grant of probation on May 20, 2009, rule 4.435 precludes consideration of her conduct after the grant of probation for purposes of determining the base term.  However, that defendant remained crime free during her period of cooperation with the prosecution is entitled to little weight, as she was motivated during that time period to achieve the benefit of her bargain and avoid exposure to two life terms for murder.  And even if the entire four years could be properly considered, we would likely view that period as a rather short lapse of time, constituting an aggravating factor.  After all, it had only been four years since she hatched the idea to commit a theft that resulted in the death of two people, and only 16 months after she was formally placed on probation.

As for defendant's cooperation prior to her grant of probation, defendant received the benefit of her agreement.  Where, as here, a defendant's cooperation with law enforcement was the product of a plea bargain whereby she obtained the dismissal of two counts of murder, her cooperation is not a mitigating factor.  (*See People v. Burg* (1981) 120 Cal.App.3d 304, 306–307 [a guilty plea resulting from a plea bargain is not a sufficient acknowledgment of guilt to constitute a mitigating factor since the admission is only to receive a benefit from the prosecution].)

That the offense may actually only have been attempted robbery because nothing in the record shows that anything was taken is a distinction with no difference.  Not only is the claim contrary to defendant's plea, which admitted the offense was a robbery,[7] but even if nothing was taken, that fact is in no way attributable to defendant.  It was the resistance by the victims that prevented a completed robbery.

In sum, the court cited multiple aggravating factors.  Any one of those factors clearly outweighed the mitigating factors that could be considered, including the fact that defendant had no prior convictions.

Finally, defendant contends if probation was granted initially, it does not follow that defendant should now receive the upper term of nine years.  Defendant asserts that the imposition of the upper term, when her original sentence was probation "renders the sentence hugely disproportionate to the facts of the case" and was "grossly unfair under the circumstances."  In making this argument,

---

[7]  A defendant may not challenge on appeal the factual basis for his or her entry of a plea. (*People v. Voit* (2011) 200 Cal.App.4th 1353, 1365–1366.)

12

1
2
3
4
5
6
7

defendant overlooks three circumstances.  First, the bar was set low in this case by the plea agreement.  Defendant was initially granted probation for her agreement to testify truthfully, and for no other reason.  Second, defendant was originally exposed to indeterminate life sentences for the deaths of two people, and as part of her bargain, she agreed that her maximum exposure would be limited to 12 years.  Third, section 1203.2, subdivision (c) expressly provides that, "[u]pon any revocation and termination of probation the court may, if the sentence has been suspended, pronounce judgment for any time *within the longest period for which the person might have been sentenced*."  (Italics added.)  Thus, the statutory scheme contemplates the potential for long sentences after revocation of probation.

8
9

Given the totality of the circumstances, there was no abuse of discretion by the court in imposing the upper term for the robbery.

10

*Butler*, 2013 WL 1283866, at *3-6.

11

### b. <u>Applicable Law and Analysis</u>

12

Petitioner's challenge to her upper term sentence essentially involves an interpretation of

13

state sentencing law.  As explained above, "it is not the province of a federal habeas court to

14

reexamine state court determinations on state law questions."  *Wilson v. Corcoran*, 562 U.S. 1, 5

15

(2010) (quoting *Estelle*, 502 U.S. at 67).  So long as a sentence imposed by a state court "is not

16

based on any proscribed federal grounds such as being cruel and unusual, racially or ethnically

17

motivated, or enhanced by indigency, the penalties for violation of state statutes are matters of

18

state concern."  *Makal v. State of Arizona*, 544 F.2d 1030, 1035 (9th Cir. 1976).  *See also Miller*

19

*v. Vasquez*, 868 F.2d 1116, 1118–19 (9th Cir. 1989) (issue concerning only state sentencing law

20

not suitable for federal habeas review).  Thus, "[a]bsent a showing of fundamental unfairness, a

21

state court's misapplication of its own sentencing laws does not justify federal habeas relief."

22

*Christian v. Rhode*, 41 F.3d 461, 469 (9th Cir. 1994).  Under the circumstances of this case,

23

petitioner has failed to demonstrate that the state court's imposition of the upper term sentence for

24

a robbery in which two people were killed was fundamentally unfair.

25

Petitioner also claims that her upper term sentence violates the Sixth Amendment, as set

26

forth in the *Apprendi* and *Cunningham* decisions.  As respondent notes, these claims are

27

unexhausted.  Exhaustion of state court remedies is a prerequisite to the granting of a petition for

28

a writ of habeas corpus.  28 U.S.C. §§ 2254(b)(1).  However, notwithstanding petitioner's failure

to exhaust these claims, the court recommends that they be denied on the merits.  *See* 28 U.S.C.

§ 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits,

notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the

State").

In *Apprendi*, *Cunningham*, and *Blakely v. Washington*, 542 U.S. 296 (2004), the United

States Supreme Court established that, for Sixth Amendment purposes, any fact that increases the

penalty for a crime beyond the prescribed statutory maximum, except the fact of a prior

conviction, must be submitted to a jury and proved beyond a reasonable doubt.  Pursuant to

California law at the time petitioner was sentenced, California's Determinate Sentencing Law for

a violation of a statute specifying three terms of imprisonment, such as a robbery, had been

amended in response to the *Cunningham* decision to provide that the choice between the three

terms "shall rest within the sound discretion of the court" without the need to find and weigh

aggravating or mitigating factors.  *See* Cal. Penal Code § 1170(b) (2009).  *See also People v.*

*Sandoval*, 41 Cal.4th 825, 836, n.2 (2007).  In light of this amendment to California's sentencing

law, the trial judge's exercise of discretion to sentence petitioner to the maximum term for the

robbery did not violate the Sixth Amendment.  *See Chioino v. Kernan*, 581 F.3d 1182, 1186 (9th

Cir. 2009) (describing California's amended Determinate Sentencing Law as "amending [the law]

to comply with the constitutional requirements of *Cunningham*"); *Butler v. Curry*, 528 F.3d 624,

652 n. 20 (9th Cir. 2008) ("Following the decision in *Cunningham*, the California legislature

amended its statutes such that imposition of the lower, middle or upper term is now discretionary

and does not depend on the finding of any aggravating factors."); *Ochoa v. Uribe*, No. ED CV 12-

586-RGK (PLA), 2013 WL 866118, at *7 (C.D. Cal. Jan. 28, 2013) ("Because the amendment to

§1170(b) eliminated the middle term as the statutory maximum, petitioner has not shown that the

imposition of the upper terms violated the rule formed in *Apprendi*, *Blakely*, and *Cunningham*.");

*Lloyd v. Gonzalez*, No. CV 11-3321 PJW, 2012 WL 84046 at *3 (C.D. Cal. Jan. 10, 2012)

("Under [the 2007 amendment to California Penal Code § 1170(b)] the trial judge was authorized

in its (sic) discretion to sentence Petitioner to the upper term without any aggravating factors

being proven to a jury or admitted by Petitioner."); *Jones v. Knipp*, No. EDCV 09-1395-

14

1  JSL(CW), 2012 WL 3839428 at *6 (C.D. Cal. July 27, 2012) ("At the outset, Petitioner's claim

2  fails because he was sentenced pursuant to the amended DSL, which accords with the rule

3  announced in *Apprendi* as applied by *Cunningham*"); *Juarez v. Allison*, No. CV 10-10001-GE E,

4  2011 WL 3654449, at *5 (C.D. Cal. Mar. 22, 2011) (upper term sentence pursuant to amended

5  version of § 1170(b) did not violate the Sixth Amendment right to a jury trial).

6         Petitioner may also be claiming that that her upper term sentence of nine years on the

7  robbery charge, or her overall sentence of twelve years, constitutes cruel and unusual punishment

8  in violation of the Eighth Amendment to the United States Constitution.  She is not entitled to

9  habeas relief on any such claim.

10        The United States Supreme Court has held that the Eighth Amendment includes a "narrow

11  proportionality principle" that applies to terms of imprisonment.  *See Harmelin v. Michigan*, 501

12  U.S. 957, 996 (1991) (Kennedy, J., concurring).  *See also Taylor v. Lewis*, 460 F.3d 1093, 1097

13  (9th Cir. 2006).  However, successful challenges in federal court to the proportionality of

14  particular sentences are "exceedingly rare."  *Solem v. Helm*, 463 U.S. 277, 289-90 (1983).  *See*

15  *also Ramirez v. Castro*, 365 F.3d 755, 775 (9th Cir. 2004).  "The Eighth Amendment does not

16  require strict proportionality between crime and sentence.  Rather, it forbids only extreme

17  sentences that are 'grossly disproportionate' to the crime."  *Harmelin*, 501 U.S. at 1001

18  (Kennedy, J., concurring) (citing *Solem*, 463 U.S. at 288, 303).  In *Lockyer v. Andrade*, the United

19  States Supreme Court held that it was not an unreasonable application of clearly established

20  federal law for the California Court of Appeal to affirm a "Three Strikes" sentence of two

21  consecutive 25 year-to-life imprisonment terms for a petty theft with a prior conviction involving

22  theft of $150.00 worth of videotapes.  *Andrade*, 538 U.S. at 75.  The Supreme Court has also held

23  that a "Three Strikes" sentence of 25 years-to-life in prison imposed pursuant to a grand theft

24  conviction involving the theft of three golf clubs from a pro shop was not grossly disproportionate

25  and did not violate the Eighth Amendment.  *Ewing v. California*, 538 U.S. 11, 29 (2003).

26        Petitioner has failed to show that her sentence falls within the type of "exceedingly rare"

27  circumstance that would justify habeas relief under the Eighth Amendment.   Petitioner received a

28  sentence of twelve years in prison for her plea of no contest to one count of robbery of an

1  inhabited dwelling in concert with two or more persons, one count of conspiracy to commit

2  robbery, and an allegation that a principal was armed with a firearm.  In *Andrade* and *Ewing*, the

3  United States Supreme Court upheld much longer sentences for far less serious crimes than the

4  crimes petitioner was convicted of.  In *Harmelin*, the Supreme Court upheld a sentence of life

5  without the possibility of parole for possessing a large quantity of cocaine.  *Harmelin*, 501 U.S. at

6  996.  In *Rummel v. Estelle*, 445 U.S. 263 (1980), the Supreme Court concluded that a sentence of

7  life with the possibility of parole for obtaining money by false pretenses did not constitute cruel

8  and unusual punishment.  *Rummel*, 445 U.S. at 282.  In light of these decisions of the United

9  States Supreme Court, it cannot be said that the sentence imposed in petitioner's case was grossly

10  disproportionate.  Accordingly, petitioner is not entitled to federal habeas relief on any claim that

11  her sentence violates the Eight Amendment.

12            **2. Consecutive Terms**

13        In her second ground for relief, petitioner claims that the trial court abused its discretion in

14  imposing "consecutive terms."  ECF No. 1 at 4.  She explains:

15  
16  > Court did not identify any other reasons for imposing consecutive sentences for a two year term for the same act.  Penal Code PC 654 states in part, "An acquittal or conviction & sentence under anyone bars a prosecution for the same act or omission under any other."
17  > Thus violating 6th, 8th, 14th Amendment.

18  *Id.*

19        Petitioner also challenged the trial court's imposition of consecutive terms on appeal.  The

20  state appellate court found that her claim in this regard had been waived because of her trial

21  counsel's failure to object to the sentence on this ground at the sentencing proceedings.  The court

22  reasoned as follows:

23            **II. Imposition of Consecutive Sentences**

24  > Defendant contends reversal of the consecutive term of two years for the conspiracy conviction is required for three reasons.  First,
25  > the court failed to state any factor for imposing the consecutive term.  Second, if this court finds the trial court did state such a
26  > factor, it must have been only that defendant had taken advantage of a position of trust, which constitutes a prohibited dual use of that
27  > factor.  Third, if this court concludes defendant's failure to object to the foregoing errors forfeited the issue for appellate review, then
28  > she received ineffective assistance of counsel.

We conclude that defendant has forfeited the first two claims.  In *People v. Scott* (1994) 9 Cal.4th 331 (*Scott*), our high court stated, "We conclude that the waiver doctrine should apply to claims involving the trial court's failure to properly make or articulate its discretionary sentencing choices.  Included in this category are cases in which the stated reasons allegedly do not apply to the particular case, and cases in which the court purportedly erred because it double-counted a particular sentencing factor, misweighed the various factors, or failed to state any reasons or give a sufficient number of valid reasons." (*Scott, supra*, 9 Cal.4th at p. 353.)  Here, defendant did not object on the ground that the trial court failed to specifically state any reason for imposing a consecutive sentence, or on a dual use of fact ground.  Consequently, the issue is forfeited.

Defendant claims that defense counsel preserved these contentions.  She points out that in her statement of mitigation, which the trial court stated it had read and considered, she argued that the probation officer's statement that consecutive sentencing was proper because the crimes were committed at different times and separate places (rule 4.425(a)(3)) was not factually accurate and should have alerted the court that it was required to state reasons for imposing a consecutive term.

We disagree.  "Although the court is required to impose sentence in a lawful manner, counsel is charged with understanding, advocating, and clarifying permissible sentencing choices at the hearing.  Routine defects in the court's statement of reasons are easily prevented and corrected if called to the court's attention.  As in other waiver cases, we hope to reduce the number of errors committed in the first instance and preserve the judicial resources otherwise used to correct them." (*Scott, supra*, 9 Cal.4th at p. 353.)  Thus, it was defendant's burden to point out to the court at the time of sentencing that it had not stated any reason for imposition of a consecutive term on the conspiracy sentence or that it had double-counted factors.  The court could have corrected the error then.[8]

---

[8]   On January 20, 2012, the People filed a motion to augment the record with the trial court's minute order denying defendant's petition for modification of sentence, which the trial court filed over a month after defendant filed her notice of appeal.  Although not necessary for our disposition of this matter, we grant the People's motion to augment the record with the court's minute order.

In its order, the court wrote, "[D]efendant seeks a concurrent sentence as to Count 4, a violation of Penal Code section 182.  The Court continues to find that based upon California Rule[s] of Court, Rule 4.425(a)(3) [the crimes were committed at different times or separate places, rather than being committed so closely in time and place as to indicate a single period of aberrant behavior], the crime of robbery of an inhabited dwelling in concert with two or more persons (Count 3) and the crime of conspiracy to commit robbery of an inhabited dwelling in concert with two or more persons (Count 4) occurred at different times and locations.  The robbery of an inhabited dwelling in concert with two or more person occurred at Olivehurst, California on or about September 27, 2005.  The conspiracy to commit robbery of an inhabited dwelling in concert with two or more persons began in early September 2005 in the Sacramento, California area . . . .  In view of the Court's sentencing objectives and Rule 4.425(a)(3), the Court continues to finds [sic ] that the consecutive sentence of one-third of the middle term of six years,

17

1                 Therefore, defendant may not raise the issue for the first time on

2 appeal.

3 *Butler*, 2013 WL 1283866, at **6-7.

4        Respondent argues that petitioner's second ground for relief is unexhausted and

5 procedurally defaulted. ECF No. 14 at 24. It is true that "[a] federal habeas court will not review

6 a claim rejected by a state court 'if the decision of [the state] court rests on a state law ground that

7 is independent of the federal question and adequate to support the judgment." *Martin*, 131 S. Ct.

8 at 1127. However, a reviewing court need not invariably resolve the question of procedural

9 default prior to ruling on the merits of a claim. *Lambrix v. Singletary*, 520 U.S. 518, 524-25

10 (1997); *see also Franklin v. Johnson*, 290 F.3d 1223, 1232 (9th Cir. 2002) ("Procedural bar issues

11 are not infrequently more complex than the merits issues presented by the appeal, so it may well

12 make sense in some instances to proceed to the merits if the result will be the same"); *Busby v.*

13 *Dretke*, 359 F.3d 708, 720 (5th Cir. 2004) (noting that although the question of procedural default

14 should ordinarily be considered first, a reviewing court need not do so invariably, especially when

15 the issue turns on difficult questions of state law). Thus, where deciding the merits of a claim

16 proves to be less complicated and less time-consuming than adjudicating the issue of procedural

17 default, a court may exercise discretion to reject the claim in its merits and forgo an analysis of

18 procedural default. *See Boyd v. Thompson*, 147 F.3d 1124, 1127 (9th Cir. 1998); *Batchelor v.*

19 *Cupp*, 693 F.2d 859, 864 (9th Cir. 1982). Under the circumstances presented here, the

20 undersigned finds that petitioner's claim can be resolved more easily by addressing it on the

21 merits. Accordingly, this court will assume that petitioner's second ground for relief is not

22 procedurally defaulted. The court also concludes that this sentencing claim should be denied on

23 the merits, notwithstanding petitioner's failure to exhaust the claim in state court. 28 U.S.C.

24 § 2254(b)(2).

25        Although petitioner adds a citation to the Sixth, Eighth, and Fourteenth Amendments in

26 her description of this claim, her second claim for relief essentially involves the interpretation of

27

28 namely 2 years is warranted for the subordinate term, a felony violation of Penal Code section 182." While the trial court indicates it "continues to" make the above findings, the court never articulated that finding on the record during the sentencing hearing.

1  state sentencing law.  A habeas petitioner may not "transform a state-law issue into a federal one"

2  merely by asserting a violation of the federal constitution.  *Langford v. Day*, 110 F.3d 1380, 1389

3  (9th Cir. 1997).  Rather, as set forth above, petitioner must show that the decision of the

4  California Court of Appeal somehow "violated the Constitution, laws, or treaties of the United

5  States."  *Little v. Crawford*, 449 F.3d 1075, 1083 (9th Cir. 2006) (quoting *Estelle*, 502 U.S. at 68).

6  Petitioner's claim, which essentially involves a challenge to state sentencing laws, is not

7  cognizable in this federal habeas action.

8          Even if the claim were cognizable, petitioner has failed to show that her consecutive two-

9  year sentence for conspiracy violates the Sixth Amendment or any other provision of the federal

10  constitution.  In *Oregon v. Ice*, 555 U.S. 160 (2009), the United States Supreme Court held that

11  judges have discretion to determine whether sentences are imposed consecutively or concurrently

12  under the Sixth Amendment rules announced in *Apprendi* and *Blakely*.  The Court found that

13  "[t]he decision to impose sentences consecutively is not within the jury function that 'extends

14  down centuries into the common law.'" *Id.* at 168 (quoting *Apprendi*, 530 U.S. at 477).  Instead,

15  "specification of the regime for administering multiple sentences has long been considered the

16  prerogative of state legislatures." *Id.* The Sixth Amendment does not prohibit trial judges from

17  finding facts necessary to support the imposition of consecutive, rather than concurrent,

18  sentences. *Id.* at 167-71.  Accordingly, petitioner is not entitled to relief on any claim based on

19  the Sixth Amendment.

20          As explained above, petitioner has also failed to demonstrate that her sentence violates the

21  Eighth Amendment proscription against cruel and unusual punishment, or that it is fundamentally

22  unfair, in violation of the Fourteenth Amendment.  Accordingly, petitioner is not entitled to relief

23  on her claims under the Eighth and Fourteenth Amendments.

24          For all of the foregoing reasons, petitioner's second ground for relief should be denied.

25          **B.  Ineffective Assistance of Counsel**

26          In her final ground for relief, petitioner claims that her trial counsel rendered ineffective

27  assistance.  ECF No. 1 at 5.  Her claim is stated, in full, as follows:

28  /////

> Ineffective assistance of counsel for failure to object. Violates *Strickland vs. Washington*. His failure to object to judge sentencing among his other duties fell below normal standards and in doing so it prejudice defendant at trial and post trial.

*Id.*

## 1. <u>State Court Decision</u>

On direct appeal, petitioner claimed that her trial counsel rendered ineffective assistance in failing to object at the sentencing hearing to the trial court's imposition of a consecutive term for the conspiracy conviction. *Id.* at 34-37. She argued that "the objection would have been meritorious because the trial court clearly erred in failing to articulate reasons for the consecutive term or in its dual use of an aggravating factor." *Id.* at 37. Petitioner also argued that trial counsel's deficient performance resulted in prejudice because "there is a reasonable probability that without the trial court's errors, a concurrent term would have been selected." *Id.*

The California Court of Appeal rejected these arguments, reasoning as follows:

> As to defendant's claim that failure to object results in constitutionally ineffective assistance of counsel, we disagree. To establish ineffective assistance of counsel, a defendant must show (1) counsel's performance was below an objective standard of reasonableness under prevailing professional norms, and (2) the deficient performance prejudiced defendant. (*Strickland v. Washington* (1984) 466 U.S. 668, 688, 691–692 [80 L.Ed.2d 674] (*Strickland*); *People v. Ledesma* (1987) 43 Cal.3d 171, 216–217 (*Ledesma*).) "'Surmounting *Strickland* 's high bar is never an easy task.' [Citation.]" (*Harrington v. Richter* (2011) U.S. [178 L.Ed.2d 624, 642] (*Richter*), quoting *Padilla v. Kentucky* (2010) 599 U.S. , [176 L.Ed.2d 284, 297].)

> We follow our high court's direction, "'If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed.'" (*In re Alvernaz* (1992) 2 Cal.4th 924, 945.) To show prejudice, a defendant must show a reasonable probability that he would have received a more favorable result had counsel's performance not been deficient. (*Strickland, supra*, 466 U.S. at pp. 693–694; *Ledesma, supra*, 43 Cal.3d at pp. 217–218.) "A reasonable probability is a probability sufficient to undermine confidence in the outcome." (*Strickland, supra*, 466 U.S. at p. 694; *accord, Ledesma, supra*, 43 Cal.3d at p. 218.)

> Rule 4.425(b) provides that "[a]ny circumstances in aggravation or mitigation may be considered in deciding whether to impose consecutive rather than concurrent sentences," except a fact used to impose the upper term, a fact used to otherwise enhance the

defendant's prison sentence, and a fact that is an element of the crime.   As we have noted, any one of the aggravating factors identified by the trial court was sufficient to justify imposition of the upper term.  For example, assuming that in selecting the upper term the court used the factor that defendant took advantage of a position of trust in the way it described when it gave its reasons for imposing the upper term, the following factors remain available for use in imposing a consecutive sentence.  Not only did the robbery involve great violence (rule 4.421(a)(1)), but people were killed.  Thus, the robbery was distinctly worse than the customary robbery.  (*People v. Castorena* (1996) 51 Cal.App.4th 558, 562 (*Castorena*) [where the facts surrounding the charged offense exceed the minimum necessary to establish the elements of the crime, the trial court can use such evidence to aggravate the sentence and the trial court is not precluded from using facts to aggravate a sentence when those facts establish elements not required for the underlying crime].)  Moreover, the fact that there is more than one victim is a proper factor for imposition of upper term or consecutive sentences.  (*People v. Calhoun* (2007) 40 Cal.4th 398, 405–408, citing rule 4.408(a).)

Defendant's participation in the way the crime was carried out shows planning and sophistication (rule 4.421(a)(8)).  In addition, she induced others to participate in the commission of the crime and occupied a position of leadership in its commission (rule 4.421(a)(4)).  Defendant's contention that consideration of the use of the planning factor violates the dual use rule because planning is an element of the conspiracy unavailing.  Even assuming planning is an element of conspiracy,[9] in making a sentencing choice the court may consider the totality of a defendant's involvement in the crime.  (Rule 4.421(a)(4); *Castorena, supra*, 51 Cal.App.4th at p. 562.)  Defendant was more than a follower.  She originated the idea of committing a theft of marijuana from the victims who were killed.[10]  Moreover, the object of the theft was a suspected large

---

[9]   Strictly speaking, planning is not an element of conspiracy.  "A conviction for conspiracy requires proof of four elements: (1) an agreement between two or more people, (2) who have the specific intent to agree or conspire to commit an offense, (3) the specific intent to commit that offense, and (4) an overt act committed by one or more of the parties to the agreement for the purpose of carrying out the object of the conspiracy. [Citations.]" (*People v. Vu* (2006) 143 Cal.App.4th 1009, 1024 (*Vu*).)  Nor does the prosecution have to show sophistication as an element of conspiracy.  Yet, the original plan conceived by defendant showed just that.

[10]   While the trial court discussed defendant's involvement in the crime in the context of denying probation (see fn. 3, ante ) and in later describing how she took advantage of a position of trust, the court did not expressly mention as aggravating circumstances for imposing the upper term that defendant conceived the idea of stealing the marijuana from the victims, presented that idea to the coconspirators, and did nothing to stop the commission of the crimes.

The other aspects of defendant's involvement the court expressly mentioned it considered in connection with the position of trust factor could have been considered under rule 4.421(a)(4) as circumstances showing her leadership in the crime or as separate factors relevant to the

21

quantity of contraband that was to be sold and defendant was to share in the proceeds.  (Rule 4.408(a); see rule 4.421(a)(10).)[11] Lastly, we observe that the victims' family dog was shot, a violation of section 597, subdivisions (a) and (d) and a fact that could be considered an aggravating factor under rule 4.421(a)(1), facts related to the crime, whether or not charged, that involved "a high degree of cruelty, viciousness, or callousness."   Because these factors would all be available to the court upon resentencing,[12] there is no reasonable likelihood defendant would obtain a more favorable outcome.  Hence, defendant cannot establish prejudice.

*Butler*, 2013 WL 1283866, at **7-8.

## 2. **Applicable Legal Standards**

The applicable legal standards for a claim of ineffective assistance of counsel are set forth in *Strickland v. Washington*, 466 U.S. 668 (1984).  To succeed on a *Strickland* claim, a defendant must show that (1) his counsel's performance was deficient and that (2) the "deficient performance prejudiced the defense."  *Id.* at 687.  Counsel is constitutionally deficient if his or her representation "fell below an objective standard of reasonableness" such that it was outside "the range of competence demanded of attorneys in criminal cases."  *Id.* at 687–88 (internal

---

sentencing decision under rule 4.408(a).  These included the following: defendant took the other coconspirators to the location, actively participated in the first attempt to steal the marijuana by luring one of the victims away from the premises, and provided the coconspirators with information concerning the victims' ability to resist, including the fact that the victims had firearms and the location where they kept those firearms.  As the court appears to have considered these facts under the position of trust factor, they cannot be used again as a reason for consecutive sentences.

[11]  Under rule 4.421(a)(10), it is an aggravating factor when the crime involves a "large quantity of contraband."  The record is not clear on the size of the crop defendant and her crime partners sought to steal, but we must assume the conspirators thought it large enough that they could make money from selling it.  Even assuming the crop did not qualify as particularly large, that defendant suggested stealing a controlled substance knowing that the purpose was to resell it and that she planned to personally share in the proceeds are facts reasonably related to the sentencing decision under rule 4.408(a).

[12]  We need not decide whether the court was justified in determining that the robbery and conspiracy were committed at different times and places, because that reason was only stated by the trial court in its order denying defendant's motion to modify the sentence after defendant's notice of appeal was filed.  We do note that conspiracy is an ongoing going crime (*Vu, supra*, 143 Cal.App.4th at p. 1024), so a conspiracy may take place in locations other than where the agreement is reached.

22

1   quotation marks omitted).  "Counsel's errors must be 'so serious as to deprive the defendant of a

2   fair trial, a trial whose result is reliable.'"  *Richter*, 131 S.Ct. at 787-88 (quoting *Strickland*, 466

3   U.S. at 687).

4          A reviewing court is required to make every effort "to eliminate the distorting effects of

5   hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the

6   conduct from counsel's perspective at the time."  *Strickland*, 466 U.S. at 669; *see Richter*, 131

7   S.Ct. at 789.  Reviewing courts must also "indulge a strong presumption that counsel's conduct

8   falls within the wide range of reasonable professional assistance."  *Strickland*, 466 U.S. at 689.

9   This presumption of reasonableness means that the court must "give the attorneys the benefit of

10  the doubt," and must also "affirmatively entertain the range of possible reasons [defense] counsel

11  may have had for proceeding as they did."  *Cullen v. Pinholster*, 563 U.S. 170, 196 (2011)

12  (internal quotation marks and alterations omitted).

13         Prejudice is found where "there is a reasonable probability that, but for counsel's

14  unprofessional errors, the result of the proceeding would have been different."  *Strickland*, 466

15  U.S. at 694.  A reasonable probability is "a probability sufficient to undermine confidence in the

16  outcome."  *Id.*  "The likelihood of a different result must be substantial, not just conceivable."

17  *Richter*, 131 S.Ct. at 792.  A reviewing court "need not first determine whether counsel's

18  performance was deficient before examining the prejudice suffered by the defendant as a result of

19  the alleged deficiencies . . . .  If it is easier to dispose of an ineffectiveness claim on the ground of

20  lack of sufficient prejudice . . . that course should be followed."  *Strickland*, 466 U.S. at 697.

21              **3. <u>Analysis</u>**

22         The *Strickland* standards govern claims for ineffective assistance of counsel in noncapital

23  sentencing proceedings.  *Daire v. Lattimore*, 812 F.3d 766 (9th Cir. 2016).   After reviewing the

24  record of the sentencing proceedings in petitioner's case, this court does not find that petitioner's

25  trial counsel rendered ineffective assistance in failing to object to the trial court's decision to

26  impose a consecutive sentence for the conspiracy conviction.

27         As set forth above, the California Court of Appeal concluded that trial counsel's failure to

28  object to the trial court's imposition of a consecutive sentence for the conspiracy conviction did

1    not result in prejudice because that sentence was fully supported by the trial record and was

2    proper under California law.  The state court's decision that petitioner's sentence complied with

3    the requirements of California law is binding on this court.  *See Bradshaw v. Richey*, 546 U.S. 74,

4    76 (2005) ("We have repeatedly held that a state court's interpretation of state law, including one

5    announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas

6    corpus"); *Horton v. Mayle*, 408 F.3d 570, 576 (9th Cir. 2005) (citing *Mullaney v. Wilbur*, 421

7    U.S. 684, 691 (1975)) ("If a state law issue must be decided in order to decide a federal habeas

8    claim, the state's construction of its own law is binding on the federal court).

9        Further, the decision of the Court of Appeal is not based on an unreasonable determination

10   of the facts of this case.  The facts of this case, as set forth in the record supports the court's

11   conclusion that the robbery in this case involved great violence, that there was more than one

12   victim, that petitioner's participation in the way the crime was carried out showed planning and

13   sophistication, that petitioner induced others to participate in the robbery, that the object of the

14   theft was a suspected large quantity of contraband that was to be sold, and that the victims' family

15   dog was shot.  *See* Clerk's Transcript on Appeal at 72-73, 151, 163-66, 168-70.  According to the

16   Court of Appeal, any of these factors would have supported the trial court's imposition of a

17   consecutive term for the conspiracy.  Under these circumstances, petitioner cannot show deficient

18   performance or prejudice from her trial counsel's failure to object to the imposition of

19   consecutive sentences.  An objection on these grounds would not have been successful.  *Rupe v.*

20   *Wood*, 93 F.3d 1434, 1445 (9th Cir. 1996) ("the failure to take a futile action can never be

21   deficient performance").

22       For all of the foregoing reasons, petitioner is not entitled to relief on her claim of

23   ineffective assistance of trial counsel.

24   **C. Traverse**

25       In the traverse, petitioner claims that prosecutorial misconduct induced her to enter into a

26   plea agreement in which she waived potential sentencing issues arising under Cal. Penal Code

27   654.  ECF No. 15 at 5-7.  She also asserts that her plea agreement somehow violated her right to

28   "equal protection of constitutional law;" that her conviction for possession of a firearm was based

24

1  on insufficient evidence; and that the trial court's use of the "crimes of murder, for which

2  petitioner was never charged, as factors in aggravation," violated her right to equal protection of

3  the laws.  *Id.* at 6-7, 13.  Petitioner states that she "can not be forever held accountable for two

4  murders."  *Id.* at 13.  She also disagrees with some of the facts contained in respondent's brief on

5  appeal.  *Id.* at 7-9.

6      To the extent petitioner is attempting to belatedly raise new claims in the traverse, relief

7  should be denied.  *See Cacoperdo v. Demosthenes*, 37 F.3d 504, 507 (9th Cir. 1994) (a traverse is

8  not the proper pleading to raise additional grounds for relief); *Greenwood v. Fed. Aviation*

9  *Admin.*, 28 F.3d 971, 977 (9th Cir. 1994) ("we review only issues which are argued specifically

10  and distinctly in a party's opening brief").  Even if these claims had been properly raised,

11  petitioner's conclusory allegations fail to demonstrate that the prosecutor committed misconduct,

12  that her plea agreement violated the Fourteenth Amendment Equal Protection Clause, or that her

13  convictions are based on insufficient evidence.  *See Jones v. Gomez*, 66 F.3d 199, 204 (9th Cir.

14  1995) (quoting *James v. Borg*, 24 F.3d 20, 26 (9th Cir. 1994) ("It is well-settled that '[c]onclusory

15  allegations which are not supported by a statement of specific facts do not warrant habeas

16  relief'")).  With regard to petitioner's sentence, for the reasons set forth above petitioner has

17  failed to show that the trial court's imposition of the upper term for the robbery or a consecutive

18  two year term for the conspiracy violates the federal constitution.

19  **IV. Conclusion**

20      Accordingly, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of

21  habeas corpus be denied.

22      These findings and recommendations are submitted to the United States District Judge

23  assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

24  after being served with these findings and recommendations, any party may file written

25  objections with the court and serve a copy on all parties.  Such a document should be captioned

26  "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

27  shall be served and filed within fourteen days after service of the objections.  Failure to file

28  objections within the specified time may waive the right to appeal the District Court's order.

1    *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir.

2    1991).  In his objections petitioner may address whether a certificate of appealability should issue

3    in the event he files an appeal of the judgment in this case.  *See* Rule 11, Rules Governing Section

4    2254 Cases (the district court must issue or deny a certificate of appealability when it enters a

5    final order adverse to the applicant).

6    DATED:  October 20, 2016.

7                                                    EDMUND F. BRENNAN
                                                     UNITED STATES MAGISTRATE JUDGE

26